Judge Underwood,
delivered the opinion of the court.
On the 15th of August, 1824, B. W. Patton, the defendant’s testator as attorney at law, collected for the bank $733 50 cents, in its own notes, then worth only $366 75 cents, in specie.
*191 Patton did not pay over the amount thus collected ill his life time. The hank and Patton’s executor, made an agreed case, and the circuit court adjudged that the bank should recover ‡366 75 cents, with interest thereon. The hank claimed a judgment for the amount of its own notes, either with or without interest, and has brought the case to this court with that view, hoping to reverse the decision of the circuit court.
On the 29th Deccember, 1823, when the notes of the bank of the Commonwealth, were depreciating, the legislature provided, that the courts, before which, any officer or attorney at law might he proceeded against for hank paper, should “scale the amount so received, by the value thereof in specie, at the time the same was legally due and demandadle from such officer or attorney at law.” In January, 1827, when hank paper, or notes on the bapk of the Commonwealth were appreciating, the legislature repealed the law, allowing “paper money”to be scaled, as aforesaid, and directed that “hereafter any court or justice of the peace, rendering judgment in such cases, against any such officer, shall render judgment for the bank paper, so collected by said officer.” The agreed case was presented for consideration, to the circuit court, in April, 1829. If the first legislative act, should govern the case, it is clear that the judgment must he affirmed; but if the second act is to govern it, then the judgment must he reversed. Both these acts were based upon just principles and a desire on the part of the legislature to prevent collecting officers from appropriating to their own use hank paper, officially received and to enforce punctuality. If under the first act, hank notes were collected, being at the time 25 per cent, under par and the officer did not pay them over punctually, when proceeded against, he was bound to pay 75 cents specie, for each paper dollar, although, at the time judgment was rendered against him, the hank notes may have depreciated 50 per cent. If this had not been so regulated by the legislature, it v, ould have been within the power of a fraudulent officer, by making use of the paper when collected, converting it then into specie, and only paying its greater depreciated value, when moved against, to profit by a violation of his duty, and his relusal to pay over the bank notes as soon as collected. Without the passage of *192 the second act, when the paper of the Commonwealth’s Laxilc, began to appreciate, cases of more glaring injustice might hare arisen. Thus, an officer, who had col---lected $1000, in paper, worth when received, only half its nominal amount, might not be called on for it, until it had risen, in value, 25 per cent, or more. If then, he was permitted by law, to discharge himself, by paying its value, when he collected it, he would malee a gain equal to the appreciation, when it was his duty to preserve safely and hand over the notes received, he being the mere depository and stake holder, for the real owner of the notes.
The word “of-theaotof m 1827, includes attornies and^uthori-zes bank paper collected, caUy recovered.7 "
In the present case, Patton and his representatives have kept the notes which he collected for the bank, from 1824, up till 1829, when they were demanded, if he and they, did what they ought to have done. When called on for the notes, they refuse to pay them over, hut insist, they have a right to discharge themselves by paying half their nominal amount, in specie, when it is known, that there has been a great appreciation in the value °f the paper. If the identical bank notes have not been preserved, if they have been used by Patton, or his representatives, the case is made worse for them in a moral aspect. Thus, the very evils which the legislature have been endeavoring to guard against, would be inflicted upon the bank, in the present case, if the judgment is permitted to stand. If Patton has thrown into circulation, by converting to his own use, the $733 50 cents, which he collected for the bank in its own notes, he has subjected the incorporation to a liability for that amount, in specie, to the holders of the notes, to meet which, his representatives propose to pay one half with interest; more glaring injustice, would not result from the conduct of an attorney, by the improper use of the client’s funds. ' In our opinion, it would outrage the spirit of the acts of the legislature, referred to, to tolerate it. We think the present case comes within the title of the act of 1827. The word “officer'’ as us i ed in that act, taken in connexion with the provisions of the act referred to, ami which is repealed in part, and Which, expressly includes attornies at law, has a meaning sufficiently broad to embrace attornies.
The language of the act of 1827, will justify a court Or justice of the peace, in rendering judgment for the *193 bank paper collected, that there shall be a specific re-eovery. We perceive no reason, therefore, why the court should not, in this case, have rendered judgment for the amount of the notes collected by Patton-, according to the act of 1827.
A¿t of lg2~ is no violation of the comtitution.
The implied undertaking „ey afiaw'ri to pay over to his client on ^e“gn<i0’rtho property collected.
If an attorney refuse to pay his client the ™°perfy collected by him, he is responsi-^atth^tTme he converts it.
The 'only objection, possessing the least plausibility, is, that it would be giving to the act of 1827, a retrU-spective operation. The legislature, by the language used, 'contemplated that effect; Such an operation the act of 1827j does not violate-any principle of justice ¡or impair the-obligation of any contract. There is no constitutional provision, which militates against such retrospective operation of the act.
The implied undertaking of'an attorney at law, is to pay over to his client, when demanded, the money or the identical. property, collected for his client. If h'e does not do it, he is, and ought to he, responsible for th'e value of the property, at the time he converts it, which, if it he hank notes, passing as money, by delivery, should, in the general, be fixed at the tinte of the dé-mand Inade, and the refusal to pay.
, i In the present case, there is no evidence bf a'demand or a conversion, anterior to April, 1829, when the agreed case was submitted. If the paper collected for the bank had been kept, as it should have been, and which the defendant in error has not gainsaid, and can-hot, without charging an impropriety on his testator 'or himself, the refusal to pay it over when demanded, was an injury, equal to its thefi value; if an attorney recovers for his client, a young slave, daily becoming more valuable, and keeps him for years, without demand. and until the slave becomes doubly valuable', and then refuses to deliver him over on demand, for the conversion, he is answerable for the value at the time of the .refusal to deliver. The previous possession may not he inconsistent with the owner’s right, and the conversion is complete from the date of the refusal to deliver.
This Case, and that of hank notes, appreciating in value, is analogous in principle. In the case of the, slave, the owner might maintain detinue against his ah torney, instead of the action of trover and conversion. In the case of banknotes, by the act of 1827, the legisla* *194 ture intended to secure a recovery in kind, which, in relation to bank notes, is equivalent to a specific recovery of the identical thing, one hank note, for an hundred dollars being precisely equal in value, to any other note of the same amount, on the same hank.
Act of 1827 in its retrospective features, Only prescribes a new remedy, without prejudice to the rights of either client or attorney.
Thus, the act of ‘1827, in its retrospective features, is nothing more than precisely a new remedy, without operating to the prejudice of the rights of any party concerned, and without the remedy so presciibed, it would be within the power of attorneys at law, to practice great injustice upon their clients, by insisting on the enforcement of the provisions of the act of 1823, notwithstanding the change which had taken place in the condition of the currency since the passage of that act.
In the case of Feemster vs. Ringo, V Mon. 336, this court decided, that the act of 1821, authorizing the plaintiff in action of covenant for bank paper, to recover the paper in kind, did not apply to contracts made before the enactment. In the case of Duckham vs. Smith, Ibid, 375, the court, in referring to that of Feemster vs. Ringo, after stating, that the construction, therein .given to the act of 1824, was, that it did not include notes or contracts made before its passage, add, “and as this contract was made and became due before the passage of that act, the case was not affected by it.”
We cannot admit that there is sucb analogy between these cases and the present one, as to bring it witbin their influence. There was no express contract, made between Patton and the bank, stipulating for the payment of bank notes at any fixed period or upon demand. The implication of law is, that Patton undertook to keep his client’s notes, collected for them, and to pay them over upon request. If he failed, the inju: y which the Bank thereby sustained, was equal, at least, to the value of its notes, as a commodity in market, at the time ■of his failure, and we are inclined to think, equal to the responsibility which he imposed upon the bank, by circulating its notes, which was to the extent of their nominal amount. Now for this injury, the legislature, before it happened, (for it only occurred upon demand and refusal) had provided an adequate remedy, by the passage-of the act of 1837*
The legislature cannot abolish existing remedies, and impair the obligation of contracts; but they may extend or give new remedies .
Crittenden, for plaintiff.
If that act is not applied to this case because of a .supposed impropriety, in rendering it retroactive, then it is manifest, that no other remedy known to the law, can administer complete justice to the plaintiff in error. While we admit that the legislature cannot, by the abolition of existing remedies, with a view to which, contracts may have been entered into, impair their obligation, or render less secure and valuable the rights of the citizen, we cannot concede that a legislative act should be restricted in its operation, merely because it is retroactive.
Judgment reversed with costs de bonis testatoris and cause remanded, with directions to enter judgment for $733 50 cents, in notes on the bank of the Commonwealth, but without interest.